**Cheryl RUFFIN–STEINBACK, Personal Representative of the Estate of Davis B. Ruffin, p/k/a David Ruffin, and his beneficiaries, Plaintiffs,**

v.

**Suzanne DE PASSE, de Passe Entertainment, Otis Williams ("Temptations"), National Broadcasting Co., Inc., Motown Record Co., L.P., Jobete Music Co., Inc., Polygram Holding, Inc. and Seagrams, Inc., Individuals and Corporations, Jointly and Severally, Defendants.**

No. 98–73769.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 17, 1998.

Gregory J. Reed, Detroit, MI, for plaintiffs.

Melanie LaFave, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for Defendants Suzanne de Passe, de Passe Entertainment, Otis Williams and NBC, Inc.

### OPINION AND ORDER DENYING PLAINTIFF'S PETITION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

FEIKENS, District Judge.

#### I. INTRODUCTION

Plaintiff Cheryl Ruffin–Steinback (Steinback) is the daughter of the late David Ruffin (Ruffin)—a former member of the singing group the Temptations, and personal representative of his estate. She brings this action against Suzanne de Passe, de Passe Entertainment, Otis Williams (a member of the Temptations), National Broadcasting Corporation (NBC), Motown Record Company, Jobete Music Co., Polygram Holding Inc., and Seagrams, Inc. Because of their projected joint production of a four-hour television miniseries on the "real life drama of the lives of members of the Temptations" which will be broadcast on November 1 and 2, 1998, she seeks injunctive relief (a temporary restraining order and an injunction) preventing these broadcasts, and damages (including royalties for the use of Ruffin's name, likeness, or life story). The injunctive relief she seeks would 1) require defendants to remove all reference to Ruffin from the miniseries unless defendants paid royalties to the Ruffin estate, 2) order defendants to consult her on various aspects of the production, and 3) order defendants to produce a portion of the miniseries in Detroit.

Steinback alleges infringement of right to publicity; "false light" invasion of privacy; defamation; unfair competition/Lanham Act violation; intentional interference with advantageous business relationships; unjust enrichment; breach of contract; breach of fiduciary duty; negligence; and conspiracy. Before me now is her immediate request that I issue a temporary restraining order and a preliminary injunction to prevent defendants from broadcasting the miniseries as scheduled.

#### II. DISCUSSION

In her pleadings, Steinback acknowledges that Ruffin was a well-known public figure during his lifetime, famous for his membership in the Temptations. Ruffin was a member of the Temptations during the group's heyday, from 1964 to 1968, and sang lead vocals on a number of the group's most popular songs. Steinback and defendants note that even after his departure from the Temptations, Ruffin was inextricably linked to the "legendary group by fans and music pundits alike." Steinback states that "Ruffin's image, as the 'quintessential Temptation,' remains indelibly etched in the minds of the public even after [his] death." He died in 1991.

To obtain injunctive relief, Steinback must show that her claims have a likelihood of success on the merits, that she will suffer irreparable harm if the injunctive relief is not granted, that the relief requested would not substantially harm others, and that public interest will be served by an injunction. *Michigan State AFL—CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997). After hearing oral argument on this motion, it is clear to me that Steinback has no likelihood of success on the merits.

The miniseries is based in large part on a book entitled *Temptations*, written by Otis Williams, a member of the Temptations (during Ruffin's time with the group and thereaf-

ter), a co-defendant in this case. Steinback alleges that the portions of this miniseries concerning events in Ruffin's life will necessarily be inaccurate and defamatory. She relies on *Hicks v. Casablanca Records,* 464 F.Supp. 426 (S.D.N.Y.1978), to support her assertion that the First Amendment does not afford free speech protection to defendants' broadcast of the Temptations miniseries. She presents a fanciful interpretation that the First Amendment provides protection for entirely factual or entirely fictional media portrayals of events, but no protection for portrayals containing mixtures of fact and fiction.

Steinback admits that she desires to take advantage of the public interest in the Temptations, and to produce her own account of the life and times of Ruffin. A significant portion of her argument addresses the perceived financial disadvantage she will experience with respect to production of any biographical story concerning Ruffin once defendants broadcast their miniseries.

However, the relief Steinback requests is offensive to the First Amendment. She desires that I place a prior restraint on defendants' free speech. This I cannot do. In *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the Supreme Court invalidated, as a prior restraint, an injunction issued against a newspaper pursuant to a Minnesota statute providing that any newspaper publishing malicious, scandalous, or defamatory material is a nuisance and can be permanently enjoined. *Id.* at 721–23, 51 S.Ct. 625. The Court stated that "the constitutional freedom from previous restraint" cannot be forfeited simply because "charges are made of derelictions which constitute crimes." *Id.* at 720, 51 S.Ct. 625.

[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after the judgment has become final, correct or otherwise, does the law's sanction become fully operative.

A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for a time.

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). In other words, under First Amendment protections, defendants in this case are permitted to speak or express themselves without restraint. Thereafter, Steinback may seek judicial relief for any alleged harm such speech may have caused her (*e.g.,* slander, libel, or defamation actions).

Grant of Steinback's request for injunctive relief in this instance would violate the free speech protections of the First Amendment, and therefore must be denied.

## CONCLUSION

For the reasons discussed herein, plaintiff's motion for a temporary restraining order and a preliminary injunction is hereby DENIED.

**IT IS SO ORDERED.**